## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JENNIFER JEAN HUSKINS**, | Case No. 3:15-cv-02186-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant. | |

Tim Wilborn, P.O. Box 370578, Las Vegas, NV, 89137. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Gerald J. Hill, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 Mailstop 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Jennifer Jean Huskins ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title XVI of the Social Security Act. For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings consistent with this opinion.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff filed an application for DIB and SSI on February 14, 2012, alleging disability beginning January 25, 2012. AR 39. She was 51 years old at the alleged disability onset date. *Id.* The Commissioner denied the claim initially and upon reconsideration; Plaintiff thereafter

requested a hearing before an Administrative Law Judge ("ALJ"). AR 129. An administrative

hearing was held on February 13, 2014, and the ALJ subsequently ruled that Plaintiff was not

disabled under the Social Security Act. AR 36-47. The Appeals Council denied Plaintiff's

request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-4.

Plaintiff now seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ first found that Plaintiff meets the insured status requirements for DIB. AR 41. At step one of the sequential analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date. *Id.* At step two, the ALJ found that Plaintiff has the following severe impairments: "osteoarthritis of the hands, fibromyalgia, and degenerative disc disease." *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in the regulations. *Id.* at 42.

The ALJ next determined Plaintiff's RFC. The ALJ found that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with the following limitations: "She should never climb ladders, ropes, or scaffolds; she should not work at unprotected heights or around hazardous machinery; she can frequently climb ramps and stairs; she can frequently stoop, crouch, kneel, and crawl; and she can frequently finger and handle." AR 43. At this step, the ALJ assigned "[l]ittle weight" to testimony given by Plaintiff, her sister, and her daughter and "[s]ome weight" to the opinions of state agency medical consultants. AR 45-46. At step four, the ALJ found Plaintiff "capable of performing past relevant work as a security guard, auction assistant, telemarketer, process server and bank clerk." AR 46. Because the ALJ had found that Plaintiff can perform past relevant work, the ALJ found that she is not disabled. AR 47.

## DISCUSSION

Plaintiff argues the ALJ erred by: (A) failing to give clear and convincing reasons for rejecting Plaintiff's testimony; (B) failing to give germane reasons for rejecting lay witness testimony; (C) finding that Plaintiff's impairments do not "equal" a listed impairment;

(D) finding that Plaintiff could perform her past relevant work; and (E) failing to include Plaintiff's limitations in the vocational hypothetical and RFC finding.

## A.  Plaintiff's Credibility

Plaintiff argues that the ALJ improperly rejected her symptom testimony. The Commissioner responds that the ALJ provided sufficient reasons for rejecting Plaintiff's symptom testimony, namely inconsistencies among claimant's statements and conflicts between claimant's statements and the medical evidence.

The ALJ engages in a two-step analysis when assessing the credibility of a claimant's symptom testimony. *Molina v. Astrue,* 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if there exists "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If such evidence exists and there is no evidence of malingering, "then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of symptoms." *Molina,* 674 F.3d at 1112 (citation and quotation marks omitted). For example, an ALJ may reject a claimant's symptom testimony based on inconsistencies in the claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). An ALJ may also reject a claimant's symptom testimony when it is inconsistent with the medical evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Still, "[o]ccasional symptom-free periods—and even the sporadic ability to work— are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); *see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). Furthermore, an ALJ may not discredit a claimant's subjective symptom testimony solely on the basis that no objective medical evidence supports that testimony. *Burch*, 400 F.3d at 681; *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ rejected Plaintiff's report of right hip arthritis, neck and upper back pain, and falls based on a lack of objective medical evidence supporting those claims. AR 45. But a lack of objective medical evidence alone is an insufficient reason to reject Plaintiff's subjective symptom statements. *Burch*, 400 F.3d at 681; *Light*, 119 F.3d at 792. Additionally, the record contains numerous instances where Plaintiff complained of hip, neck, and upper back pain and falls. *See* AR 338 (noting that Plaintiff "has struggled with back pain on and off" since her motor vehicle accident in 1997); 348 (listing cervicalgia (neck pain) in Plaintiff's active problem list); 354 (indicating that Plaintiff's "chief complaint" was of "widespread pain throughout her back and the right side of her body from the neck down to the foot" beginning following her 1997 motor vehicle accident); 365 (listing cervicalgia in Plaintiff's active problem list); 423 (MRI of the brain for "[u]nexplained ataxia and falls"); 453-54 (noting Plaintiff has "known cervicalgia," was "sitting in guarded position" during the exam, and that her "[p]ain [is] not well controlled"); 441 (noting that Plaintiff complaints of "right-sided hip pain" that has been "ongoing . . . for at least the last couple of years" and "[a]lso complains of fall at times"). Therefore, the ALJ erred by rejecting Plaintiff's symptom testimony regarding right hip arthritis, neck and upper back pain, and falls without providing a clear and convincing reason.

With regard to her hand pain, the ALJ rejected Plaintiff's symptom statements as inconsistent with and unsupported by the objective medical evidence. AR 45-46. The ALJ points to medical records reflecting improvement in hand function following surgery and reports made by Plaintiff regarding expected and actual improvement of her pain following surgery. AR 45. But brief improvement in Plaintiff's symptoms is "not inconsistent with disability." *Lester*, 81 F.3d at 833. Although the medical evidence reflects some improvement in Plaintiff's symptoms following her hand surgery, that relief was short-lived. Plaintiff's subjective pain complaints and

treatment of her pain following surgery are well documented in the medical evidence. *See* AR 427 (Plaintiff has been "complaining [of] bilateral thumb pain for about 6 years, right more symptomatic than left. . . . She had tried previous cortisone injections and braces with temporary pain relief."); 436 (noting Plaintiff's "complaints of bilateral thumb pain that has been going on for about 6 years . . . and is exacerbated by any hand activity" and that Plaintiff reports "numbness and tingling in the right hand"); 448 (noting "[o]steoarthritis of hand, well documented" in the assessment section of progress notes); 460 (diagnosing Plaintiff with arthritis of the right acromioclavicular joint); 461 (noting Plaintiff's reports of increased pain several weeks after her second surgery).

Additionally, that a brief improvement of symptoms is not indicative of full recovery is particularly true for fibromyalgia, which Plaintiff was diagnosed with by state agency medical consultants. *Id.* at 98-101, 105, 114, 124, 134. "[T]he fact that Plaintiff's pain 'waxed and waned' is not a clear and convincing reason for discrediting Plaintiff's pain testimony. In fact, the fluctuations in pain described by Plaintiff are consistent with a diagnosis of fibromyalgia." *Nunn v. Astrue*, 2012 WL 442900, at *5 (D. Or. Feb. 9, 2012); *see also Neisinger v. Colvin*, 2016 WL 2866260, at *4 (W.D. Wash. May 17, 2016) ("Social Security Administration rulings recognize the longitudinal record of an individual's symptoms is important in fibromyalgia cases, as 'the symptoms of [fibromyalgia] can wax and wane so that a person may have bad days and good days.'" (quoting Social Security Rule ("SSR") 12-2p, *available at* 2012 WL 3104869 (July 25, 2012))); *Schooley v. Colvin*, 2015 WL 1062029, at *7 (D. Ariz. Mar. 11, 2015) ("[T]he symptoms of [fibromyalgia] can wax and wane so that a person may have bad days and good days."); *Simington v. Astrue*, 2011 WL 1261298, at *4 (D. Or. Feb. 23, 2011) ("Fibromyalgia pain can fluctuate and medications and self-help measures may help lessen the severity of the

symptoms, but there will still be days that are worse than others."). Plaintiff's longitudinal record reveals that she has suffered from her complained of symptoms dating back to 1998 following a motor vehicle accident. *See* AR 53-69.[1] For example, medical records from January of 1998 indicate that Plaintiff suffered from "tenderness of the trapezial crest of the shoulder on the right and a tender area over the upper pull of the scapula" and tenderness of the "paraspinal muscles of the neck on the right side." *Id.* at 53.  Medical records from May 1998 note that although Plaintiff's symptoms at first improved with treatment, she returned with "more pain in the shoulder, neck and upper back" and experienced "tingling sensations down the arm." *Id.* at 66. Plaintiff's ongoing complaints, with sporadic improvement, are consistent with her diagnosis of fibromyalgia. Accordingly, the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony.

**B.  Lay Witness Testimony**

Plaintiff argues that the ALJ improperly rejected the lay witness testimony of Plaintiff's sister and daughter. Plaintiff contends that the ALJ's reasons for rejecting the witnesses' testimony—that the testimony is not supported by medical evidence and is undermined by the witnesses' possible secondary gain—are not germane reasons to discount their testimony. The Court agrees.

---

[1] These records were submitted by Plaintiff on July 20, 2014, after the ALJ issued his decision. AR 325-28. This evidence was before the Appeals Council when it made its decision, issued September 29, 2015; therefore, it became part of the record that this Court must consider. *See Muraco v. Colvin*, 2015 WL 437791, at *6 (D. Or. Feb. 3, 2015) ("District courts must consider additional evidence submitted to the Appeals Council when the Appeals Council considers the new evidence in deciding whether to review a decision of the ALJ. The new evidence 'becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.') (quoting  *Brewes v. Comm'r Soc. Sec. Admin*., 682 F.3d 1157, 1163 (9th Cir. 2012)).

The Commissioner may "use evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work," including from relatives. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[R]egardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition.'" *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)). But "evidence that a specific spouse exaggerated a claimant's symptoms in order to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony." *Id.*

Here, the ALJ gave "[l]ittle weight" the lay witness testimony provided by Plaintiff's sister, Susan Huskins, and Plaintiff's daughter, Jennifer Kellon. AR 46. The ALJ noted that the testimony was "undermined by possible secondary gain" because both witnesses had provided financial assistance to Plaintiff in the past. *Id.* From that past assistance, the ALJ inferred that "[i]f the claimant were to received disability payments, [the lay witnesses] would also benefit financially and this factor calls into question the reliability of [their] statements." *Id.* The Court rejects this inference. There is no evidence in the record that Plaintiff's sister and daughter testified in order to get money from Plaintiff or avoid having to provide monetary assistance to Plaintiff in the future. The record simply reflects that they were able to provide financial assistance to Plaintiff in the past.

In *Smolen v. Chater*, the ALJ rejected testimony given by family members because they were "understandably advocates, and biased." 80 F.3d 1273, 1289 (9th Cir. 1996). The court found that this was not a germane reason sufficient to reject such testimony. *Id.* In reaching this conclusion, the court noted:

> [T]he same could be said of any family member who testified in any case. The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members.

*Id.* (citation omitted)*; see also Dodrill*, 12 F.3d at 919 ("An eyewitness can often tell whether someone is suffering or merely malingering. . . . [T]his is particularly true of witnesses who view the claimant on a daily basis.").

The Court finds the underlying reasoning of *Smolen* applicable here. Family members are often in the best position to witness a plaintiff's daily activities and symptoms, which is reflected in the SSA's reliance on the testimony of family members. Family members living with or otherwise supporting a social security claimant will also likely have some secondary financial gain if the claimant receives benefits. If the Court were to accept the ALJ's rejection of lay witness testimony on the basis of possible secondary gain without further evidence of a financial motive, it would undermine the SSA's recognition of the value of such testimony.

Plaintiff also argues that the ALJ's rejection of lay witness testimony as unsupported by medical evidence is contrary to circuit precedent. In support of this argument, Plaintiff cites case law that applies now-superseded Social Security Rulings. As such, that argument is unconvincing. The ALJ, however, relied on the same medical evidence—noting improvement of Plaintiff's symptoms following surgery—as relied on in rejecting Plaintiff's symptom testimony. For the same reasons the Court found that Plaintiff's temporary improvement following surgery did not amount to a clear and convincing reason for rejecting Plaintiff's testimony, the Court

finds that this is not a germane reason for rejecting the lay witness testimony of Plaintiff's sister and daughter.

## C.  Step Three Determination

Plaintiff argues that the ALJ erred at step three because he failed to consider whether Plaintiff's fibromyalgia—which the ALJ found to be a severe impairment at step two—medically equals a listed impairment. Additionally, Plaintiff argues that the ALJ's failure to consider whether Plaintiff's combined impairments equal a listed impairment is reversible error. The Court agrees.

"If the findings related to [a claimant's] impairments are at least of equal medical significance to those of a listed impairment, we will find that [the claimant's] combination of impairments is medically equivalent to that listing." 20 C.F.R. § 404.1526(b)(3). "If the claimant has more than one impairment, the Commissioner must determine whether the combination of [the] impairments is medically equal to any listed impairment." *Lewis*, 236 F.3d at 514 (citing 20 C.F.R. § 404.1526) (quotation marks omitted); *see also* 20 C.F.R. § 416.926. "[T]he ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Additionally, the ALJ is not limited to simply considering a claimant's severe impairments. *See Nguyen v. Colvin*, 2014 WL 127071, at *9 (D. Or. Jan. 13, 2014) (If a claimant's "medically determinable impairment of fibromyalgia does not meet or equal a listed impairment, the ALJ must then consider the combined effect of all of [claimant's] impairments in conjunction with her fibromyalgia, severe and non-severe, in determining her RFC.").  Social Security Rulings provide further guidance for step three determinations involving claimants suffering from fibromyalgia:

> "[Fibromyalgia] cannot meet a listing in appendix 1 because
> [fibromyalgia] is not a listed impairment. At step 3, therefore, we
> determine whether [fibromyalgia] medically equals a listing (for

example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

SSR 12-2p.

The ALJ erred by failing to consider whether fibromyalgia—on its own or in combination with Plaintiff's other medically determinable impairments—medically equals a listing. The ALJ made the following step three findings:

> The claimant's hand osteoarthritis is evaluated under listings 1.02B. Treatment records do no reflect that the claimant is unable to perform fine and gross movements effectively on a sustained basis.
>
> The claimant's degenerative disc disease is evaluated under listing 1.04. Treatment records do not reflect that the claimant is unable to ambulate effectively on a sustained basis, or that she meets other conditions of that listing.

AR 42-43. The ALJ failed to mention whether Plaintiff's fibromyalgia medically equals a listed impairment or whether the combination of Plaintiff's impairments medically equals a listed impairment. Thus the ALJ erred.[2]

Plaintiff also argues that she met certain listings. Plaintiff, however, fails to identify *medical* evidence in the record that supports such a finding. Plaintiff refers to testimony by Plaintiff, her sister, and her daughter. Plaintiff "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." *Burch*, 400 F.3d at 683. Such a finding must be based on medical evidence. *See Lewis*, 236 F.3d at 514. Plaintiff must therefore present medical evidence as to why her impairments equal a listing. *Id.*; *see also Burch*, 400 F.3d at 683 (rejecting the plaintiff's

---

[2] Because the Court finds that the ALJ improperly rejected Plaintiff's symptom testimony and lay witness testimony, the Commissioner must properly consider this evidence on remand. Therefore, the Court notes that the step-three determination may change upon proper consideration of the testimonial evidence.

step three argument because "[e]ven on appeal, [plaintiff] has not pointed to any evidence of functional limitations . . . which would have impacted the ALJ's analysis"). Because Plaintiff fails to identify medical evidence in support of her argument, the Court does not reach this argument. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (noting that "requiring the district court to search the entire record, even though the adverse party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair" to the court and other litigants).

## D.  Past Relevant Work

Plaintiff argues the ALJ's step four finding is reversible error. Plaintiff contends that three of Plaintiff's former jobs do not qualify as past relevant work because they did not constitute substantial gainful activity. Additionally, Plaintiff argues that substantial evidence does not support the ALJ's finding that she can perform her past relevant work as actually performed and as generally performed.

### 1.  Substantial Gainful Activity

Plaintiff argues that her 2006 process server, 2008 auction center, and 2008 telemarketer jobs do not qualify as past relevant work because they were not substantial gainful activity. "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Work must involve substantial gainful activity to constitute past relevant work. *Lewis*, 236 F.3d at 515. To qualify as substantial gainful activity, work must be both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." *Lewis*, 236 F.3d at 515. Social Security Regulations establish the average monthly earnings that will generally show that a plaintiff engaged in substantial gainful activity. 20 C.F.R.

§§ 404.1574(a)(1), 416.974(a)(1). If a plaintiff's earnings averaged $860 or below in 2006 and $940 or below in 2008, the burden shifts to the Commissioner to identify substantial evidence that the Plaintiff engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1574, 416.974; *see also Lewis*, 236 F.3d at 515 ("The presumption that arises from low earnings shifts the step-four burden of proof from the claimant to the Commissioner . . . [to] point[ ] to substantial evidence, aside from earnings, that the claimant has engaged in substantial gainful activity."). The ALJ must consider five factors: the nature of the work, how the claimant performs the work, if the work is done under special conditions, if the claimant is self-employed, and the time spent in work. 20 C.FR. §§ 404.1573, 416.973.

Plaintiff performed the process server job from May 2006 to July 2006 and reported total earnings of $316. AR 1, 234, 271. Plaintiff's average monthly earnings for this work fall below a monthly average of $860. Accordingly, the ALJ was required to consider the five factors provided in the Social Security Regulations to overcome the presumption that this work did not qualify as substantial gainful activity. *See* 20 C.FR. §§ 404.1573, 416.973.

On her work history report, Plaintiff reported performing the telemarketer job from March 2008 to April 2008. AR 1. During the hearing, however, she testified to performing the job for a total of four months. AR 93. Her earnings records reflect total earnings of $2409. AR 234. If Plaintiff's hearing testimony is credited, her average monthly earnings for this position were $602.25, bringing her below the $940 monthly average that would create a presumption that this work constituted substantial gainful activity. If, however, her work history report is credited and Plaintiff only performed the telemarketer work for one month, Plaintiff's average monthly earnings would be between $2409.

PAGE 15 – OPINION AND ORDER

The Court, however, need not resolve the disparity in Plaintiff's reported periods of work. In addition to qualifying as substantial gainful activity, the work must also have lasted long enough for Plaintiff to have learned how to do it to constitute past relevant work. At the hearing, the vocational expert ("VE") testified that the telemarketer job had a specific vocational preparation ("SVP") of 3. With an SVP of 3, a job would take two to four months for the average worker to learn the skills and techniques required to perform the job. AR 94. Thus, if Plaintiff performed the job for one month as stated on her work history report, she would not have performed the job long enough to learn how to do it for the purpose of satisfying the regulatory requirements of past relevant work. And if Plaintiff performed the job for four months as she testified during the hearing, her average monthly earnings would fall below the presumptive substantial gainful activity amount, and the ALJ would have been obligated to discuss the five factors laid out in Social Security Regulations.

Plaintiff performed the auction center job from June 2008 to November 2008 and reported total earnings of $1500.50. AR 1. Plaintiff's average monthly earnings were therefore $310.10, well below the $940 monthly average that would create a presumption that this work constituted substantial gainful activity. Therefore, Social Security Regulations require the ALJ to consider five factors to overcome the presumption that this work did not qualify as substantial gainful activity. *See* 20 C.FR. §§ 404.1573, 416.973.

Because Plaintiff's work as a process server and auction assistant—and possibly her work as a telemarketer, as discussed above—fell below the average monthly earnings prescribed by Social Security Regulations, the ALJ was obligated to consider five factors to overcome the presumption that the work did not qualify as substantial gainful activity. The ALJ failed to discuss the factors. *See* AR 46-47. Thus, the ALJ erred at step four by finding that these jobs

qualified as past relevant work. *See Lewis*, 236 F.3d at 517 ("The Commissioner did not rebut the presumption that [the claimant] had not engaged in substantial gainful activity, and thus had not engaged in past relevant work. The ALJ erred at step four.").

### 2. Past Relevant Work "As Actually Performed"

A plaintiff must be able to perform past relevant work as actually performed or as generally performed. *Pinto v. Massanari*, 249 F.3d 840, 843 (9th Cir. 2001). "Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report and the claimant's own testimony." *Id.* (citing SSR 82-61, *available at* 1982 WL 31387 (Jan. 1, 1982); SSR 82-41, *available at* 1982 WL 31389 (Jan. 1, 1982)).

The ALJ found that Plaintiff has the following residual functional capacity:

> [T]o perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). She should never climb ladders, ropes or scaffolds; she should not work at unprotected heights or around hazardous machinery; she can frequently climb ramps and stairs; she can frequently stoop, crouch, kneel, and crawl; and she can frequently finger and handle.

AR 43. "'Frequent' means occurring from one-third to two-thirds of the time." SSR 83-10, *available at* 1983 WL 31251 (Jan. 1, 1983). Thus, a "frequent" limitation restricts Plaintiff to performing a function "for a total of approximately 6 hours of an 8-hour workday." *Id.*

Plaintiff also argues that the ALJ erred by finding that Plaintiff could perform her past relevant work as a telemarketer,[3] security guard, and bank clerk as actually performed. Plaintiff described her work as a security guard as requiring up to eight hours of stooping and crouching, nine hours of standing, and one hour of walking per ten-hour shift. AR 270. The ALJ found that

---

[3] Because the Court finds that the ALJ erred in finding that the telemarketer job qualified as past relevant work, as discussed above, the Court does not decide whether Plaintiff is capable of performing this work as actually performed.

Plaintiff is limited to frequent stooping and crouching, which would restrict Plaintiff to approximately six hours of these tasks in an eight-hour shift. Plaintiff's work as a security guard, as actually performed, exceeded her RFC.

The same is true for Plaintiff's past relevant work as a bank clerk. Plaintiff described this work as requiring eight hours per shift of walking, standing, sitting, reaching, writing, typing, and handling small objects. AR 272. The ALJ found that Plaintiff is limited to frequent fingering and handling, which would restrict Plaintiff performance of these tasks to approximately six hours in an eight-hour shift. Because Plaintiff's work as a bank clerk required up to eight hours of fingering and handling, this work as actually performed exceeds Plaintiff's RFC. Therefore, the ALJ erred by determining that Plaintiff is capable of performing her past relevant work as a security guard and bank clerk, as actually performed.

### 3.  Past Relevant Work "As Generally Performed"[4]

"The Dictionary of Occupational Titles (DOT) descriptions can be relied upon—for jobs that are listed in the DOT—to define the job as it is usually performed in the national economy." SSR 82-61. An ALJ is also permitted to rely on the testimony of a VE characterizing past relevant work, particularly when the determination involves a "complex issue." 20 C.F.R. §§ 404.1560, 404.1566, 416.960, 416.966. "In order for an ALJ to accept vocational expert testimony that contradicts the Dictionary of Occupational Titles, the record must contain 'persuasive evidence to support the deviation.'" *Pinto*, 249 F.3d at 846 (quoting *Johnson v. Shalala*, 60 F.3d 1428 (9th Cir. 1995). An ALJ "must resolve [a] conflict [between VE testimony and the DOT] by determining if the explanation given by the VE . . . is reasonable and provides a

---

[4] Plaintiff argues that the ALJ erred in finding she could perform her past relevant work as a telemarketer, security guard, and bank clerk as generally performed. Because the Court finds that the telemarketer job does not qualify as past relevant work, as discussed above, the Court does not decide whether Plaintiff is capable of performing this work as generally performed.

basis for relying on the VE . . . testimony rather than on the DOT information." SSR 00-4p,

*available at* 2000 WL 1898704 (Dec. 4, 2000). Although neither the DOT listings nor VE

testimony "automatically trumps" when a conflict exists, SSR 00-4p, "the ALJ must first

determine whether a conflict exists" and, if one does, "the ALJ must then determine whether the

vocational expert's explanation for the conflict is reasonable and whether a basis exists for

relying on the expert rather than the Dictionary of Occupational Titles." *Massachi v. Astrue*, 486

F.3d 1149, 1153-54 (9th Cir. 2007). Additionally, the Social Security Rules advise that:

> Finding that a claimant has the capacity to do past relevant work
> on the basis of a generic occupational classification of the work is
> likely to be fallacious and unsupportable.  While "delivery jobs,"
> or "packaging jobs," etc., may have a common characteristic, they
> often involve quite different functional demands and duties
> requiring varying abilities and job knowledge.

SSR 82-61.

The ALJ failed to ask the VE whether her testimony conflicted with the DOT, as required

by SSR 00-4p. *See also Massachi*, 486 F.3d at 1153-54 ("Here, the ALJ did not ask the

vocational expert whether her testimony conflicted with the Dictionary of Occupational Titles

and, if so, whether there was a reasonable explanation for the conflict. Thus, we cannot

determine whether the ALJ properly relied on her testimony. As a result, we cannot determine

whether substantial evidence supports the ALJ's step-five finding that Massachi could perform

other work."). Although this error may be harmless where there clearly is no conflict, a

determination by the ALJ of whether a conflict exists between the two sources is particularly

important when a job is not listed in the DOT (such as the bank clerk position), and when the VE

presents a "generic occupational classification" for Plaintiff's work (such as the security guard

position). *See* SSR 82-61; *see also Pinto*, 249 F.3d at 846 ("Given that the title of hand packager

is extremely generic, as stated in the regulations, we have doubts about whether [the VE's]

assurance alone was an adequate basis for the ALJ's determination that Pinto's residual

functional capacity comported with her past relevant work."). Thus, the ALJ's failure to make

such a determination was error in this case, and the Court does not find it to be harmless.

### E. Vocational Hypothetical and RFC

Finally, Plaintiff argues that the ALJ failed to properly account for Plaintiff's symptom

testimony and lay witness testimony in the vocational hypothetical and RFC finding. Because the

Court has found that the ALJ improperly rejected Plaintiff and lay witness testimony, the Court

acknowledges that there may be additional limitations for the Commissioner to include in the

RFC and any vocational hypotheticals. The Commissioner must properly consider this evidence

on remand.

### F. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246

F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to

the agency for additional investigation or explanation, a court has discretion to remand for

immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-

1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an

award of benefits is appropriate when no useful purpose would be served by further

administrative proceedings or when the record has been fully developed and the evidence is

insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits

punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly

rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of*

*the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.
>
> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

The Court finds that remand for further proceedings is appropriate here. At step five, the VE testified that a limitation to "occasional" fingering and handling would "rule out competitive

work." AR 96. Plaintiff argues that crediting her testimony and that of lay witnesses unambiguously establishes such a limitation. The Court disagrees. State agency medical consultants limited Plaintiff to "frequent" fingering and handling. Thus, a conflict remains as to Plaintiff's fingering and handling limitations and a remand for benefits is not appropriate. Upon remand, the Commissioner must properly consider the witness testimony, resolve the conflicts and ambiguities in the record, and evaluate Plaintiff's limitations and RFC.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Ms. Huskins is not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 10th day of January, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge